Celeste M. Brecht (SBN 238604)
Caroline D. Murray (SBN 301754)
Ramanda R. Luper (SBN 313606)
JONES DAY
555 South Flower Street
Floor 50
Los Angeles, California 90071.2452
Telephone:  +1.213.489.3939
Facsimile:  +1.213.243.2539
Email: cbrecht@jonesday.com
       carolinemurray@jonesday.com
       rluper@jonesday.com

*Attorneys for Defendant*
ABBOTT LABORATORIES

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA LAFOND and ASHLEY LAFOND and ANGELES LAFOND, <br><br> *Plaintiffs*, <br><br> v. <br><br> MEAD JOHNSON & COMP ANY, LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, DIGNITY HEALTH d/b/a MERCY MEDICAL CENTER REDDING, and DOES 1-10, inclusive, <br><br> *Defendants*. | Case No. <br><br> **NOTICE OF REMOVAL AND REMOVAL OF ACTION UNDER 28 U.S.C. § 1441 BY DEFENDANT ABBOTT LABORATORIES** <br><br> Complaint Filed:  March 25, 2022 <br> Action Removed:  April 27, 2022 <br> Trial Date: None Set |

- 1 -

NOTICE OF REMOVAL AND REMOVAL
OF ACTION UNDER 28 U.S.C. § 1441

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Abbott Laboratories ("Abbott") gives notice that the above-captioned action pending in the Superior Court of the State of California, County of Shasta, is hereby removed to the United States District Court for the Eastern District of California.  This Court has original jurisdiction under 28 U.S.C. §§ 1332 and 1441 *et seq*.  In support of this removal, Abbott further states as follows:

1. This is a civil action filed on or about March 25, 2022, by Plaintiffs Lisa LaFond, Ashley LaFond and Angela LaFond (collectively, "Plaintiffs") in the Superior Court of the State of California, Shasta County, entitled *Lisa LaFond, et al. v. Mead Johnson & Company, LLC, et. al.*, bearing Case Number 199399.  A true and correct copy of Plaintiffs' Complaint is attached to the Declaration of Celeste M. Brecht ("Brecht Decl.") as **Exhibit A**.

2. Plaintiffs' filing of this action follows more than 300 other individuals who have filed similar lawsuits across the country in recent months.  These cases are about infants who were born too early—before 37 weeks of gestation—and developed necrotizing enterocolitis ("NEC"), an umbrella term for a disease of the gastrointestinal tract that occurs in premature infants.  NEC's causes are both complex and multifactorial, meaning that it has many known contributing factors.  Among these many risk factors, there are only two reliable prognostic parameters: gestational age and birth weight.  The younger the infant's gestational age and the less an infant weighs, the greater the risk that the infant will develop NEC.

3. These cases target a series of specialized formula and fortifier nutrition products that contain cow's milk protein.  These products are designed and sold specifically for premature infants, who suffer from a host of medical issues relating to low birthweight and underdevelopment, regardless of what nutrition is administered.

4. Infants who are born prematurely, at a low birth weight, and are small for their gestational age have underdeveloped or maldeveloped gastrointestinal systems that are simply not prepared to receive nutrition outside the womb.  As a result, highly specialized medical professionals must make sophisticated judgments about the substance, quantity, timing, and

NOTICE OF REMOVAL AND REMOVAL
OF ACTION UNDER 28 U.S.C. § 1441

method of administration when providing nutrition to these fragile infants. A team of NICU specialists continuously monitor premature infants for early signs of NEC (among the many other things that can go wrong). They do so regardless of how nutrition is administered, and regardless of whether it consists of the mother's own milk, human donor milk, specialized formula or fortifier, or a combination. Each of these lawsuits alleges that the use of Abbott and/or Mead Johnson's specialized nutrition products caused an infant's NEC because the products contain cow's milk protein. The evidence will show that there is no basis for these allegations. These products are safe and save lives. Without them, many more infants would die or suffer serious setbacks.

5. Like those other actions, Plaintiffs assert product liability claims arising from the administration of Abbott's and/or Mead Johnson's specialized preterm infant formula and/or human milk fortifiers, which Plaintiffs allege caused their premature infants to develop NEC. Plaintiffs assert the following causes of action ("COAs") against Abbott and Defendants Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (together, "Mead Johnson"): (1) Strict Products Liability for Design Defect; (2) Strict Products Liability for Failure to Warn; (3) Negligence; (4) Intentional Misrepresentation; and (5) Negligent Misrepresentation.

6. Unlike most of the lawsuits that preceded this one, however, Plaintiffs also assert *one* cause of action for Negligent Failure to Warn (Sixth COA) against Defendant Dignity Health d/b/a Mercy Medical Center Redding ("Dignity Health"), the hospital at which Plaintiffs Ashley LaFond and Angela LaFond were allegedly treated and where their physicians selected the preterm formula product at issue.

7. This case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Abbott has satisfied the procedural requirements for removal and this Court has subject matter pursuant to 28 U.S.C. § 1332.

8. As explained in detail below, Plaintiffs improperly joined Dignity Health in their claims asserted against Abbott and Mead Johnson.

9. Nearly all of the hundreds of plaintiffs who have filed similar product liability cases relating to specialized infant formula and fortifier products have asserted claims against the

manufacturers alone—not any hospitals or medical providers—and there are sound reasons for this. Indeed, the California residents who filed in Illinois state court and who are likewise represented by Plaintiffs' counsel here, did not include any claims against the hospitals or medical providers.[1]

10. The United States Judicial Panel for Multidistrict Litigation ("JPML") recently established a Multi-District Litigation ("MDL) for such claims against Abbott and Mead Johnson. *See In re Preterm Infant Nutrition Prods. Liab. Litig.*, MDL No. 3026, Order, Dkt. No. 119 (Apr. 8, 2022) (hereinafter, the "Preterm Infant Nutritional Products MDL"). The Illinois Supreme Court recently declined, without prejudice, Abbott's Rule 384 motion to consolidate the proceedings brought in Illinois state court (the "Illinois Litigation").[2] More than a dozen law firms represent the plaintiffs across the country, some of which are leading the MDL and Illinois Litigation. By contrast, Plaintiffs' counsel here has filed cases in other jurisdictions, but have not gained a leadership position in those other proceedings.

11. In an apparent attempt to secure a leadership role somewhere in this nationwide litigation, Plaintiffs' counsel is now attempting to assert claims against the treating hospitals to prevent removal and transfer to the Preterm Infant Nutrition Products MDL. In the last 36 days, Plaintiffs' counsel has filed at least 9 lawsuits in California on behalf of 25 plaintiffs, and 29 lawsuits in Pennsylvania on behalf of 29 plaintiffs. In all of these lawsuits, Plaintiffs' counsel has named the manufacturers and **also the hospitals** in which the premature infants were born and/or treated as defendants. Indeed, had these cases been filed against only the product manufacturers (like the others), they would be readily removed and transferred to the MDL—where Plaintiffs' counsel has no leadership role. This gamesmanship should not be tolerated.

12. Having removed this action, Abbott shall promptly request that the JPML transfer this action to the Preterm Infant Nutrition Products MDL pursuant to the "tag-along" procedure contained in the JPML Rules. In addition, Abbott contemporaneously seeks a stay of these

---

[1] Plaintiffs' counsel's decision to exclude local hospitals from those cases, and the demonstrated ability of those suits to proceed without them, undermines any anticipated argument that they are necessary or indispensable parties.

[2] Thirty-five of these cases are subject to pending personal jurisdiction, venue, and forum *non conveniens* motions brought by Abbott and/or Mead Johnson.

NOTICE OF REMOVAL AND REMOVAL OF ACTION UNDER 28 U.S.C. § 1441

proceedings in the interest of judicial efficiency and consistency so that the MDL can address future motions, if any.

## I. ABBOTT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

13. Pursuant to 28 U.S.C. § 1446(a), Abbott attaches to this Notice of Removal a true and correct copy of all process, pleadings, and orders filed in the state court action. *See* Brecht Decl., Exs. A-G. Abbott further attaches a true and correct copy of the state court docket. *See* Brecht Decl., Ex. H.

14. Promptly following the filing of this Notice of Removal, written notice of the removal of this action will be served on all parties' counsel, as required by 28 U.S.C. § 1446(d).

15. A true and correct copy of this Notice of Removal will also be promptly filed with the Superior Court of the State of California, Shasta County, pursuant to 28 U.S.C. § 1446(d).

16. Venue for this action is proper in this Court under 28 U.S.C. § 1441(a) because Shasta County is located within the United States District Court for the Eastern District of California (28 U.S.C. § 84(b)). Accordingly, the Eastern District of California is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

17. Plaintiffs filed this action in the aforementioned state court on or about March 25, 2022. Abbott's registered agent was served with the Complaint via process server on or about March 29, 2022. Mead Johnson, who was served on or about March 29, 2022, has consented to removal. No consent for removal from Dignity Health is required because, as set forth below, it is not properly joined. *See* 28 U.S.C. § 1446(b)(2)(A) (providing that only those defendants who have been "properly joined and served" must consent).

18. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446 because it is filed within thirty (30) days of formal service upon Abbott.

19. No previous application has been made for the relief requested herein.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS ORIGINAL JURISDICTION PURSUANT TO 28 U.S.C. § 1332(A)

20. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action in which the *properly* joined parties are citizens of different states and the amount in controversy exceeds the sum of $75,000 for each plaintiff's claims, exclusive of costs and interest.

### A. The Amount In Controversy Requirement Is Satisfied

21. It is evident from the Complaint that the amount in controversy exceeds $75,000, exclusive of interests and costs.

22. Under 28 U.S.C. § 1446(c)(2), "[i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—

> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks. . . (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded," and
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2)(A)-(B); Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63, Dec. 7, 2011. When plaintiffs do not allege a specific amount of damages in the complaint, the defendant must demonstrate the likelihood that plaintiffs' claims each exceed $75,000, exclusive of interest and costs. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). A removing defendant need only show that the amount in controversy "more likely than not" exceeds the jurisdictional amount of $75,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). When the amount in controversy is not specified in the complaint, the court may consider the facts alleged in the complaint as well as in the notice of removal. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002); 28 U.S.C. § 1446(c)(2).

23. Plaintiffs' Complaint does not allege a specific amount in controversy. Nevertheless, it is evident that the amount in controversy is satisfied. Plaintiffs seek general and compensatory damages, including medical damages, lost earning capacity, and pain and suffering.³ *See, e.g.*, Compl. ¶¶ 9, 13, 17, 76-77, 85, 92-94, 103-104, 113-114; *id*. Prayer for Relief ¶¶ 129-135. Where, as here, plaintiffs allege serious bodily injury in the context of a product liability action, California federal courts have found that the amount-in-controversy requirement is satisfied. *See, e.g.*, *Bryant v. Apotex, Inc.*, No. 1:12-CV-01377-LJO-JLT, 2012 WL 5933042, at *4 (E.D. Cal. Nov. 27, 2012) (holding that amount-in-controversy requirement was met in products liability action, although "complaint [did] not set forth a specific amount of damages," because plaintiff sought "compensatory damages for injuries and severe pain lasting six months, severe emotional distress, and punitive damages" after allegedly enduring tightening and inflammation of the esophagus); *Campbell v. Bridgestone/Firestone, Inc.*, No. CIVF051499 FVS DLB, 2006 WL 707291, at *2-3 (E.D. Cal. Mar. 17, 2006) (holding that amount in controversy exceeded $75,000, and denying motion to remand, in products liability case where plaintiff sought compensatory damages, including lost wages and loss of earning capacity, medical expenses, and general damages, after suffering head trauma and broken bones).

24. Given that Plaintiffs' claims for economic and non-economic damages are related to injuries allegedly resulting from the administration of preterm formula products and/or fortifiers, and Plaintiffs allege extensive injury, medical expenses, pain and suffering, and emotional distress, it is evident that the damages sought by Plaintiffs exceeds $75,000. *See, e.g.*, Compl. ¶¶ 9, 13, 17, 76-77, 85, 92-94, 103-104, 113-114, 129-135.

**B.   Complete Diversity of Citizenship Exists Between the Properly Joined Parties**

25. This case is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(1). As explained below, all *properly* joined and served defendants are diverse from Plaintiffs.

---

³ Abbott does not, however, concede that Plaintiffs would be entitled to any of the relief sought in the Complaint.

### 1. All Plaintiffs Are Citizens of California

26. Upon information and belief, at all times relevant hereto, Plaintiffs were residents and citizens of California. Compl. ¶ 3.

### 2. Abbott Is A Not A Citizen of California

27. Abbott is now, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of Illinois with its corporate headquarters in Lake County, Illinois. It is therefore a resident of Illinois. Compl. ¶ 5.

### 3. Mead Johnson Is Not A Citizen of California

28. Mead Johnson Nutritional Company is a wholly-owned subsidiary of Reckitt Benckiser PLC and is now, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Indiana. It is thus a resident of those two states. Mead Johnson & Company, LLC is a limited liability company whose sole member is Mead Johnson Nutritional Company, and is therefore a resident of the States of Delaware and Indiana.

### 4. Dignity Health's Citizenship Must Be Disregarded.

29. Dignity Health is a corporation created under the laws of the State of California. Compl. ¶ 6.

30. While Dignity Health is a citizen of California, it was not "properly joined" for the reasons set forth below. *See* U.S.C. § 1441(b). Thus, Dignity Health's citizenship must be disregarded for the purposes of determining the propriety of removal.

### 5. The Citizenship Of The Doe Defendants Shall Not Be Considered

31. The citizenship of the Doe Defendants shall not be considered for the purposes of determining diversity jurisdiction, as these are fictional defendants. *See* 28 U.S.C. § 1441(b) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

### C. Dignity Health Was Fraudulently Joined And Its Citizenship Must Be Disregarded

32. The presence of Dignity Health in this case does not defeat diversity jurisdiction, and does not prevent removal, because Dignity Health was fraudulently joined.

33. For this Court to exercise diversity jurisdiction over the case, all parties must be diverse. *See* 28 U.S.C. § 1446(b) (providing the procedure for removal based on diversity of citizenship); 28 U.S.C. § 1332(a) (granting federal courts original jurisdiction over all actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States). Plaintiffs have attempted to take advantage of this procedural requirement by naming Dignity Health, a California citizen, so that "at first blush it must be said that there [is] no diversity." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

34. As *Ritchey* suggests, however, courts have grown wise to this practice. In *Ritchey*, plaintiff named two non-diverse defendants, a physician and Stanford Health Services, in a product liability suit even though his claims against those providers were barred by the statute of limitations. *Ritchey*, 139 F.3d at 1320. Upjohn Drug Company, the manufacturer of the drug that plaintiff claimed caused his injuries, removed the case despite the presence of the two California defendants. *Id*. at 1315. The district court denied plaintiff's motion to remand. *Id*. The Ninth Circuit affirmed, holding that "fraudulently joined defendants will not defeat removal on diversity grounds." *Id*. The Court further explained that "fraudulent joinder" is a term of art: "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according the settled rules of the state, the joinder of the resident defendant is fraudulent." *Id*. at 1318.

35. The Ninth Circuit also explained that courts must go beyond the pleadings to determine the existence of federal jurisdiction. "Where fraudulent joinder is an issue," "[t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *Id*.

36. Although "the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent," they are similar in that they "[b]oth require some assessment of the plaintiff's lawsuit" and of whether "the complaint states a cause of action." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 549–50 (9th Cir. 2018); *see Isaacs v. Broido*, 358 Fed. App'x. 874, 877 (9th Cir. 2009) (holding that "the Rule 12(b)(6) inquiry and the fraudulent joinder inquiry substantially overlap on the issue of failure to state a claim" and that district court could have "dismissed the fraudulently joined defendants on its own motion.").

37. Ninth Circuit courts have repeatedly held that a defendant is fraudulently joined—and its presence in a lawsuit is therefore disregarded for removal purposes—when a plaintiff would be unable establish the elements of the claim or claims they have brought against the defendant. *See, e.g.*, *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (affirming district court's application of the fraudulent joinder doctrine where plaintiff could not show that sales statement was more than puffery and thus "could not possibly prevail on her negligent misrepresentation claim" against the non-diverse defendant); *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (affirming district court's application of the fraudulent joinder doctrine where the non-diverse defendant was not a signatory to any of the contracts that plaintiff alleged had been breached and so could not be liable); *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1100-01 (C.D. Cal. 2002) (finding that non-diverse defendants were fraudulently joined after holding that "[t]he factual allegations in the complaint against the resident defendants are wholly inadequate under California law to state a claim."); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (affirming district court's finding of fraudulent joinder and recognizing that a "reasonable" basis to predict that a plaintiff could prevail on his or her claims against the in-state defendants requires more than a "theoretical" basis).

38. Thus, to state a proper claim against Dignity Health, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face" and allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions and threadbare recitals of elements,

supported by mere conclusion, simply do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Rather, Federal Rule of Civil Procedure 8 "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented." *Id*. at 556. As a consequence, pleadings—such as Plaintiffs' Complaint here—that fail to set forth factual allegations to support asserted legal conclusions against non-diverse defendants should be deemed fraudulent and dismissed. *Id*. at 555; *see also Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

### 1. The Sixth COA And Only Cause of Action Brought Against Dignity Health Alone Fails As A Matter of Law.

39. Plaintiffs allege only one cause of action—negligent failure to warn—against Dignity Health alone. *See* Compl. ¶¶ 115-128. This claim fails as a matter of law.

40. In California, negligent failure to warn claims apply only to a manufacturer or distributor of the product at issue. *See Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal.3d 987, 1002 (1991) ("Negligence law in a failure-to-warn case requires a plaintiff to prove that a *manufacturer or distributor* did not warn of a particular risk for reasons which fell below the acceptable standard of care, *i.e.*, what a reasonably prudent manufacturer would have known and warned about." (emphasis added)); Judicial Council of California, Civil Jury Instruction No. 1222. Negligence – Manufacturer or Supplier – Duty to Warn – Essential Factual Elements ("To establish this claim, [Plaintiff] must prove all of the following: . . . 1. That [Dignity Health] manufactured/distributed/sold the [specialized infant formula and fortifier products].")

41. Presumably for that reason, Plaintiffs allege that Dignity Health operates as a distributor or supplier of the specialized infant formula products at issue such that it owed a duty to warn Plaintiffs of risks associated with the products. *See* Compl. ¶ 116 ("Dignity [Health], as [a] purchaser, supplier, and/or distributor of the products at issue in this litigation, owed a duty to the consuming public in general, and Plaintiffs in particular. . . ."). But as a matter of law, under California law, hospitals are *not* sellers or distributors of products or other goods used in the

1 course of providing medical services.  Instead, the business of a hospital is to provide medical
2 services to patients.  *See Silverhart v. Mount Zion Hosp.*, 98 Cal. Rptr. 187, 191 (Cal. App. 1971)
3 (holding hospital not liable for allegedly defective surgical needle because "a hospital furnishing
4 a [product] as part of the medical services it provides is not a seller engaged in the business of
5 selling [products]"); *San Diego Hosp. Ass'n. v. Superior Court*, 35 Cal. Rptr. 2d 489, 493 (Cal.
6 App. 1994) (holding hospital not liable for injuries caused to physician by allegedly defective
7 laser because "[t]he hospital is not in the business of selling or even leasing, bailing or licensing
8 equipment to the physician.  It is in the business of providing medical services to its patients. . . .
9 The fact the hospital provides equipment for the physician's use is incidental to the overriding
10 purpose of providing medical services"); *Hector v. Cedars-Sinai Med. Ctr.*, 225 Cal. Rptr. 595,
11 599 (Cal. App. 1986) (holding hospital not liable for personal injury resulting from defective
12 pacemaker because it "is not 'engaged in the business of distributing [products] to the public' . . .
13 and does not play 'an integral and vital part in the overall production or marketing' of
14 [products]"); *Shepard v. Alexian Bros. Hosp.*, 109 Cal. Rptr. 132, 135 (Cal. App. 1973) (holding
15 hospital not liable for personal injury where plaintiff contracted hepatitis from blood transfusion
16 because "[t]he patient who enters a hospital goes there not to buy [products], but to obtain a
17 course of treatment").

18     42.    Indeed, California courts have applied this reasoning to every aspect of the care
19 that hospitals provide.  *See Pierson v. Sharp Mem'l Hosp., Inc.*, 264 Cal. Rptr. 673, 676 (Cal.
20 App. 1989) (finding that hospital could not even be held liable for allegedly defective carpet in
21 patient's room because "hospitals a[re] providers of professional medical services rather than
22 producers or marketers of products" and "[a] patient's room is part of the specialized facilities
23 enabling the patient to receive 24-hour nursing care and immediate access to other vital medical
24 services.").

25     43.    Plaintiffs admit—indeed, they could not reasonably dispute—that the specialized
26 infant nutrition products at issue here were administered by doctors and medical staff as part of
27 the medical services that Dignity Health provided to Plaintiffs' as premature infants.  Compl. ¶
28 119 (alleging that the infants received the products at the direction of Dignity Health's healthcare

professionals and medical staff through the exercise of their medical judgment and in the course of treating the infants). Accordingly, Plaintiffs cannot show that Dignity Health was either a distributor or supplier of premature infant formula or fortifier products; instead, Dignity Health was a provider of medical services.

44. Because Dignity Health cannot be held liable under Plaintiffs' negligent failure to warn theory, Plaintiffs' Sixth COA—and only claim against Dignity Health—fails as a matter of law.

45. Against this existing backdrop, and because Plaintiffs cannot state a claim against Dignity Health, it is evident that Plaintiffs joined Dignity Health only to attempt to destroy diversity. Accordingly, the Court should find that removal under diversity jurisdiction is proper because Dignity Health has been fraudulently joined and, therefore, its citizenship must be disregarded.

**I.     CONCLUSION**

53. There is complete diversity amongst the properly joined parties, and this Notice of Removal is appropriate pursuant to 28 U.S.C. § 1441(b).

54. Based on the foregoing, the state court action may be removed to this Court in accordance with the provisions of 28 U.S.C. §§ 1332 and 1441 *et. seq.* because this is a civil action pending within the jurisdiction of this Court; this action is between citizens of different states; and the amount in controversy exceeds $75,000, exclusive of interest and costs.

55. No admission of fact, law, or liability is intended by this Notice of Removal, and the Abbott expressly reserve all defenses, counterclaims, and motions otherwise available to it.

//

//

WHEREFORE, Abbott removes this action, now pending in the Superior Court of the State of California, Shasta County, Case No. 199399, to this Court.

Dated: April 27, 2022

JONES DAY

By: /s/ Celeste M. Brecht
Celeste M. Brecht
Caroline D. Murray
Ramanda R. Luper

*Attorneys for Defendant*
ABBOTT LABORATORIES